IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 11-cv-01948-BNB-CBS

KATHRYN KIPLING,

Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, d/b/a Minnesota Division of State Farm Mutual Automobile Insurance Company,

Defendant.

## ORDER

This matter arises on **Defendant State Farm's Motion for Summary Judgment** [Doc. # 26, filed 4/17/2012] (the "Motion for Summary Judgment"), which is DENIED.

### I. APPLICABLE STANDARD

In ruling on a motion for summary judgment, the facts must be viewed in the light most favorable to the party opposing the motion, and that party must be afforded the benefit of all reasonable inferences to be drawn from the evidence. Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970). Rule 56(c), Fed. R. Civ. P., provides that summary judgment may be rendered if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating by reference to portions of

pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, the absence of genuine issues of material fact. Celotex Corp. v. Catrett, 447 U.S. 317, 323 (1986). The party opposing the motion is then required to go beyond the pleadings and by affidavits, depositions, answers to interrogatories and admissions on file, to designate specific facts showing that there is a genuine issue for trial. Id. at 324.

## II. UNDISPUTED FACTS

The following facts are undisputed:

1. Christopher Kipling was killed and his wife, Kathryn Kipling, was seriously injured in an automobile accident. Motion for Summary Judgment [Doc. # 26] at pp. 1-2. The Kiplings resided in Colorado. Id. at p. 13. They were on a personal trip at the time of the accident, and Christopher Kipling was not acting within the course and scope of his employment at the time. Id. at p. 2.

2. The accident occurred in Park County, Colorado, on July 27, 2009. Id. at p. 5.

3. At the time of the accident, Christopher Kipling was driving a 2005 Chevy Suburban (the "Suburban") which was provided to him by his employer for personal and business use. Id. at p. 2. Defendant ("State Farm") insured the Suburban. Exh. L [Doc. # 26-12].

4. The "Named Insured" under the State Farm policy insuring the Suburban is "Quick Silver Express Courier Inc." Id. The plaintiff argues that Quick Silver Express Courier Inc. is a Colorado corporation. Motion for Summary Judgment [Doc. # 26] at p. 12; Reply [Doc. # 47] at pp. 15-16. The evidence appears to be to the contrary or, at a minimum, disputed. Response [Doc. # 44] at p. 7. In particular, Quicksilver Express Courier, Inc. ("Quicksilver,

Inc."), is a Minnesota corporation. Exh. 2 [Doc. # 44-2]. The Colorado corporation, by contrast, is Quicksilver Express Courier of Colorado, Inc. ("Quicksilver Colorado"). Exh. 3 [Doc. # 44-3]. Quicksilver, Inc., owns all of the stock of Quicksilver Colorado. Deposition of Michael B. Crary [Doc. # 44-1] (the "Crary Depo.") at p. 13 lines 22-25; p. 17 line 6 through p. 18 line 1.

5. Jose Sanchez, the driver of another automobile, was negligent in causing the accident and was underinsured. Scheduling Order [Doc. # 15] at p. 3.

6. The plaintiff claims underinsured motorist benefits under the following four additional insurance policies (the "Minnesota Policies"):

(a) State Farm Policy No. 53 9563-A01-23E (the "23E Policy"). The "Named Insured" under the 23E Policy is Quicksilver, Inc., and "Your Car" under the 23E Policy is a 2006 Toyota Tacoma (the "Tacoma");

(b) State Farm Policy No. 71 6391-A08-23G (the "23G Policy"). The "Named Insured" under the 23G Policy is Quicksilver, Inc., and "Your Car" under the 23G Policy is a 2008 Toyota Sequoia (the "Sequoia");

(c) State Farm Policy No. 330 0729-A03-23O (the "23O Policy"). The "Named Insured" under the 23O policy is Quicksilver, Inc., and "Your Car" under the 23O Policy is a 2008 Toyota Corolla (the "Corolla"); and

(d) State Farm Policy No. 327 4806-A01-23H (the "23H Policy"). The "Named Insured" under the 23H Policy is Quicksilver, Inc., and "Your Car" under the 23H Policy is a 2007 Toyota Camry (the "Camry"). Motion for Summary Judgment [Doc. # 26] at pp. 7-12; Exh. C [Doc. # 26-3]; Exh. F [Doc. # 26-6]; Exh. H [Doc. # 26-8]; and Exh. J [Doc. # 26-10].

      7.      The four policies insuring the Tacoma, Sequoia, Corolla, and Camry contain identical policy language and endorsements.  Motion for Summary Judgment [Doc. # 26] at p. 14.

      8.      Insurance for the Tacoma, Sequoia, Corolla, and Camry was obtained through an insurance agent located in Minnesota.  Exh. C [Doc. # 26-3]; Exh. F [Doc. # 26-6]; Exh. H [Doc. # 26-8]; and Exh. J [Doc. # 26-10].  The Tacoma, Sequoia, Corolla, and Camry were never driven in Colorado.  Motion for Summary Judgment [Doc. # 26] at p. 4.  The Tacoma, Sequoia, Corolla, and Camry were not involved in the accident.  Id. at pp. 8, 10, 11, and 12.

### III.  ANALYSIS

The plaintiff's Complaint alleges a single cause of action for breach of contract. Complaint [Doc. # 1].  Specifically, the Complaint alleges:

> 19.  Defendant entered into contracts to provide uninsured/underinsured motorist coverage.
>
> 20.  Plaintiff is entitled to benefits under the contracts.
>
> 21.  Defendant is obligated to pay benefits for bodily injury and wrongful death caused by an uninsured/underinsured driver under the contracts.
>
> 22.  Defendant has failed to pay any benefits to Plaintiff under the contracts.
>
> 23.  Defendant has breached the contracts.

Id. at p. 4.  Although the Complaint does not specify the contracts alleged to have been breached, it is undisputed that they are the Minnesota Policies.  Motion for Summary Judgment [Doc. # 26] at p. 7.

The Minnesota Policies provide in relevant part:

> *We* will pay compensatory damages for *bodily injury* an *insured* is legally entitled to recover from the owner or driver of an *underinsured motor vehicle*.

Exh. M [Doc. # 26-13] at Bates 000213 (original emphasis). As used in the Minnesota Policies:

"*We*" means State Farm Mutual Automobile Insurance Company ("State Farm"), id. at Bates 000194;

"*bodily injury*" means bodily injury to a human being and sickness, disease, or death that results from it, id. at Bates 00192-93;

"*insured*" means any human being "while *occupying . . . your car*," Exh. C [Doc. # 26-3] at Bates 000168;

"*occupying*" means in, Exh. M [Doc. # 26-13] at Bates 000193; and

"*your car*" means the "vehicle shown under 'YOUR CAR' on the Declarations Page," id. at Bates 194. Here, the vehicles shown under "YOUR CAR" on the Declarations Pages of the Minnesota Policies are the Tacoma, Sequoia, Corolla, and Camry. Exh. C [Doc. # 26-3]; Exh. F [Doc. # 26-6]; Exh. H [Doc. # 26-8]; and Exh. J [Doc. # 26-10]. The occupancy must be within the scope of the insured's consent. Exh. C [Doc. # 26-3].

In plain English, the Minnesota Policies provide underinsured motorist coverage as follows:

> State Farm will pay compensatory damages for bodily injury to a human being in, with the consent of the insured, the Tacoma, Sequoia, Corolla, and Camry.

The plaintiff was not injured while in the Tacoma, Sequoia, Corolla, or Camry; the injury occurred while she was in the Chevy Suburban. Consequently, the plaintiff is not entitled to benefits under the plain language of the Minnesota Policies.

Which brings me to the parties' dispute--whether Colorado or Minnesota law controls the resolution of the case. The plaintiff argues that Colorado law controls and that under Colorado law: (1) an insurer is prohibited from tying underinsured motorist coverage to the occupancy of a particular vehicle; and (2) an insured may stack underinsured motorist coverage available under more than one policy. Under Colorado law as interpreted by the plaintiff, she is entitled to receive benefits under the Minnesota Policies issued by State Farm to Quicksilver, Inc., which include underinsured motorist coverage, regardless of whether the insured motor vehicles were involved in the accident.

State Farm disagrees. It argues that resolution of the case is controlled by Minnesota law which prohibits the stacking of underinsured motorist coverage and limits an insured's recovery to the insurance provided for the motor vehicle involved in the accident. Under State Farm's theory of the case, the plaintiff is not entitled to benefits under the Minnesota Policies.[1]

A federal court exercising diversity jurisdiction, as here, applies the choice of law principles of the forum state. <u>Klaxon Co. v. Stentor Elec. Mfg. Co.</u>, 313 U.S. 487, 496 (1941); <u>Security Service Federal Credit Union v. First American Mortgage Funding, LLC</u>, 861 F. Supp. 2d 1256, 1267 (D. Colo. 2012). Colorado has adopted the Restatement (Second) Conflict of Laws approach to conflict of laws issues for both contract and tort claims. <u>Security Service</u>

---

[1] State Farm does not dispute that the plaintiff was entitled to receive underinsured motorist benefits available under State Farm Policy No. C18 0360-E13-06G (the "06G Policy") issued to Quicksilver, Inc., and insuring a second motor vehicle (the "Ford F350 SD pickup") operated in Colorado but not involved in the accident. State Farm argues that its decision to pay under the 06G Policy is irrelevant to coverage under the Minnesota Policies because, unlike the Minnesota Policies, the 06G Policy was issued in Colorado; with respect to a motor vehicle licensed for use in Colorado; and under a Colorado insurance policy selecting Colorado law as controlling. Reply [Doc. # 47] at pp. 15-16.

6

Federal Credit Union, 861 F. Supp. 2d at 1267 (citing Wood Bros. Homes, Inc. v. Walker Adjustment Bureau, 601 P.2d 1369, 1372 (Colo. 1979)(contract actions) and Dworak v. Olson Const. Co., 551 P.2d 198, 199 (Colo. 1976)(tort actions)).

In this case, the parties disagree about which conflict of laws rule should apply--contract or tort. State Farm argues that the conflict of laws provisions relating to contract disputes apply because this is a case of contract interpretation. Motion for Summary Judgment [Doc. # 26] at p. 1. In support, it points to the fact that the plaintiff's sole cause of action asserted in the Complaint is for breach of contract. Reply [Doc. # 47] at p. 1. The plaintiff argues that tort conflict of laws principles apply:

> There is no dispute here as to the meaning of any policy provision, nor is there a question of how the Policies' UM/UIM substantive coverage provisions are to be applied to the insureds. Rather, the seminal issue is the extent of UM/UIM benefits available to Plaintiff under the multiple automobile policies.

Response [Doc. # 44] at p. 14.

Two Colorado cases address similar issues, both decided by the Colorado Court of Appeals. Where, as here, there is no controlling authority from a state's highest court, decisions of a state's intermediate court "is datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." Webco Indus., Inc. v. Thermatool Corp., 278 F.3d 1120, 1132 (10th Cir. 2002) (internal quotation and citation omitted).

The first analogous case is State Farm Mut. Auto. Ins. Co. v. Mendiola, 865 P.2d 909 (Colo. App. 1993). It involved an automobile accident on a New Mexico state highway. The insured was a Colorado resident, driving a vehicle licensed in Colorado, with insurance issued in

Colorado and intended to provide coverage primarily in Colorado.  A conflict of laws dispute arose because the application of New Mexico law resulted in greater benefits than did Colorado law.  The Colorado Court of Appeals rejected the insured's argument that New Mexico law applied, however, because "Colorado had the most significant relationship to the contract" based on the residency of the insured, where the vehicle was licensed, where the insurance was issued, and where the coverage was intended to apply.  Id. at 911.   The Colorado Court of Appeals found that facts concerning the location of the accident "were not relevant in determining choice of law for contract construction" but, instead, were appropriately considered only with respect to tort claims.  Id.

Mendiola is distinguishable, however.  In Mendiola, the parties disputed the construction of two clauses contained in the insurance policy--(I) a limited exception to a household exclusion clause; and (ii) the out-of-state coverage clause.  Id. at 910.  In the case at bar, by contrast, there is no dispute about the meaning of any policy provision.  The only issue here is whether the Colorado underinsured motorist statute, section 10-4-609(1)(a), C.R.S., as interpreted, allows the plaintiff to collect benefits under the Minnesota Policies.

The second analogous case is Ranger v. Fortune Ins. Co., 881 P.2d 394 (Colo. App. 1994). In Ranger, a Florida resident obtained a policy from Fortune Insurance, a Florida corporation, insuring a car licensed in Florida.  As permitted under Florida law, the insurance policy did not include personal injury protection ("PIP") benefits.  The Florida car was driven to Colorado, where it was involved in an accident.  Mr. Ranger--the plaintiff , a Colorado resident, and a passenger in the Florida car--was injured.  The state trial court applied Florida law and determined that no PIP benefits were payable.

   The Colorado Court of Appeals reversed, stating:

> In the area of **multistate tort controversies**, Colorado has adopted the general rule of applying the law of the state having the most "significant relationship" with the occurrence and the parties as contained in the Restatement (Second) Conflict of Laws §145 (1971). . . .
>
> [W]hen a tort rule is designed primarily to compensate the victim for his injuries, the state where the injury occurred, which is often where the plaintiff resides, may have the greater interest in the controversy.

Id. at 395 (emphasis added).

   The Colorado appellate court rejected Fortune's argument that conflict of laws rules applicable to contracts should apply. Instead, it adopted reasoning similar to that urged here by the plaintiff, holding:

> Fortune's obligation to plaintiff arose not from the express language of the insurance contract but from statutory enactments reflecting this state's public policy concerning injuries arising out of Colorado automobile accidents. Under these circumstances, the trial court was required to apply the directives of the General Assembly.

Id. at 396 (internal citation omitted).

   State Farm attempts to distinguish Ranger by arguing that the state court of appeals based its decision on the fact that the accident occurred in Colorado. However, the discussion concerning the location of the accident appears in a section of the opinion after the court of appeals' determination that the case involved tort issues, not a contract claim. Once the court found that the conflict of laws rule applicable to tort cases controlled, it was obliged to look to "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of

the parties, and (d) the place where the relationship, if any, between the parties is centered," to determine which state's law applied. Dworak, 551 P.2d at 163-64. Consequently, it was in the context of applying Colorado's conflict of laws rule applicable to tort matters, and not in deciding whether that rule or the rule applicable to contract disputes applied, that the court of appeals considered the location of the accident and related factors.

Here, as in Ranger, the disputed issue is whether a Colorado statute requires the payment of certain insurance benefits to the plaintiff. Not in dispute is the construction or interpretation of the insurance policies. Under these facts, the Colorado Court of Appeals' ruling in Ranger directs that I apply the Colorado conflict of laws rule applicable to tort claims. There is no persuasive data that the Colorado Supreme Court would decide otherwise.

Colorado is the "state with the most 'significant relationship' to the occurrence and the parties." Dworak, 551 P.2d at 199. The injury occurred in Colorado; the accident occurred in Colorado; the plaintiff and her husband resided in Colorado at the time of the accident; and the relationship between the plaintiff and State Farm, to the extent one existed, was centered in Colorado where the plaintiff's husband obtained a State Farm policy insuring the Chevy Suburban. Consequently, I find that resolution of the suit is controlled by Colorado law.

State Farm was at all applicable times authorized to do business in the State of Colorado. Answer [Doc. # 10] at ¶1. As the United States Supreme Court noted in Allstate Ins. Co. v. Hague, 449 U.S. 302, 317-18 (1981):

> By virtue of its presence, [State Farm] can hardly claim unfamiliarity with the laws of the host jurisdiction and surprise that the state courts might apply forum law to litigation in which the company is involved. Particularly since the company was licensed to do business in [Colorado], it must have known it might be sued there, and that [Colorado] courts would feel bound by [Colorado]

>law. Moreover, [State Farm's] presence in [Colorado] gave [Colorado] an interest in regulating the company's insurance obligations insofar as they affected . . . a [Colorado] resident. . . .

(Internal quotation and citation omitted.)

IT IS ORDERED that State Farm's Motion for Summary Judgement [Doc. # 26], premised on the application of Minnesota law which prohibits the stacking of underinsured motorist coverage, is DENIED.

Dated November 6, 2012.

BY THE COURT:

s/ Boyd N. Boland
United States Magistrate Judge