IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 11-cv-01948-BNB-CBS

KATHRYN KIPLING,

Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, d/b/a Minnesota
Division of State Farm Mutual Automobile Insurance Company,

Defendant.

---

### ORDER

---

This matter arises on **Defendant State Farm's Motion to Reconsider Order Denying Motion for Summary Judgment** [Doc. # 66, filed 2/21/2013] (the "Motion to Reconsider"), which is DENIED.

Christopher Kipling was killed and Kathryn Kipling was seriously injured in a two car automobile accident. Jose Sanchez, the driver of the other auto, was negligent in causing the accident and was underinsured. At the time of the accident, the Kiplings were Colorado residents and the accident occurred in Colorado.

The Kiplings' auto, a 2005 Chevy Suburban, was provided to Mr. Kipling by his employer for personal and business use. At the time of the accident, Mr. Kipling was employed by Quicksilver Express Courier of Colorado, Inc. ("QEC Colorado"), a Colorado corporation, and was also receiving compensation as a director and shareholder of Quicksilver Express

Courier, Inc. ("QEC"), a Minnesota corporation.[1]  The Suburban was insured by State Farm, and the named insured was "Quick Silver Express Courier Inc."  All insurance benefits available under the policy insuring the Suburban, including underinsured motorist benefits, have been paid.[2]

At issue here is whether the plaintiff can recover additional underinsured motorist benefits under four insurance policies (the "Minnesota Policies") issued by State Farm and insuring automobiles (the "Minnesota automobiles") owned by QEC.  The Minnesota Policies were obtained through an insurance agent located in Minnesota[3] and insured the Minnesota automobiles, which were never driven in Colorado and were not involved in the accident.

---

[1]QEC owns all of the stock of QEC Colorado.

[2]Although the named insured under the policy insuring the Suburban is "Quick Silver Express Courier Inc.," State Farm does not dispute that the coverage extends to Mr. and Mrs. Kipling, the intended operators and occupants of the Suburban.

[3]The insurance agency involved in obtaining the Minnesota Policies apparently was located in Minnesota, but State Farm executed the policies in Bloomington, Illinois.  As the Supreme Court noted in Allstate Ins. Co. v. Hague, 449 U.S. 302, 317 (1981), a case initiated in Minnesota but involving a motorcycle accident in Wisconsin resulting in the death of a Wisconsin resident:

> [T]he policy, which is part of the record, recites that Allstate signed the policy in Northbrook, Ill.  Under some versions of the hoary rule of *lex loci contractus*, and depending on the precise sequence of events, a sequence which is unclear from the record before us, the law of Illinois arguably might apply to govern contract construction, even though Illinois would have less contact with the parties and the occurrence than either Wisconsin or Minnesota.  No party sought application of Illinois law on that basis in the court below.

Coverage does not exist under the plain language of the Minnesota Policies.  To the contrary, the Minnesota Policies purport to provide underinsured motorist coverage only to a person  injured while in one of the Minnesota automobiles, which is not the case here.  This case, however, does not turn on the language of the Minnesota Policies but, instead, on the manner in which Colorado courts interpret the Colorado underinsured motorist statute, section 10-4-609(1)(a), C.R.S.

First, it is undisputed that under Colorado law State Farm is not allowed to tie its underinsured motorist coverage to occupancy in a particular automobile.  DeHerrera v. Sentry Ins., Co., 30 P.3d 167 (Colo. 2001).  The Colorado Supreme Court held in DeHerrera:

> The UM/UIM statute contains no provisions excluding protection for an insured based on the kind of vehicle an insured occupies at the time of injury.  Rather, it simply states that UM/UIM coverage, if not waived by the named insured, must protect "persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles."  § 10-4-609(1). This phrase, "'persons insured thereunder' means that insurers must provide UM/UIM coverage for the protection of persons insured under the liability policy that the insurer is issuing."  Thus, the statute provides coverage for *persons*; it does not place geographical limits on coverage and does not purport to tie protection against uninsured motorists to occupancy in any kind of vehicle.
>
> This construction of the UM/UIM statute is consistent with the effect of UM/UIM coverage limits to act as a replacement for the liability policy limits of an uninsured motorist who is at fault in a motor vehicle accident.  If a motorist insures a vehicle for liability coverage, his policy affords protection to all members of the public injured by negligent conduct "arising out of the use of the motor vehicle," irrespective of whether the injured person was a pedestrian, a bicyclist, a motorcyclist, or an occupant of a car. Thus, because UM/UIM insurance is designed to protect an innocent insured as if the person at fault had been insured for liability, then an injured insured is covered by UM/UIM insurance "*whenever or wherever* bodily injury is inflicted upon him by the

> negligence of an uninsured motorist."  In other words, the injured
> insured would have received the benefits of the uninsured or
> underinsured tortfeasor's liability policy without regard to the
> injured insured's location at the time of the injury, had that
> uninsured or underinsured motorist been insured.

Id. at 174-75 (internal citations omitted except as indicated)(original emphasis).  Under Colorado law, underinsured motorist coverage cannot be limited only to accidents involving the insured automobile.

Second, it also is undisputed that Colorado law permits stacking of underinsured motorist coverage contained in multiple insurance policies.  Specifically, section 10-4-609(1)(c), C.R.S., provides that "[t]he amount of the coverage available pursuant to this section shall not be reduced by a setoff from any other coverage, including, but not limited to, legal liability insurance, medical payments coverage, health insurance, *or other uninsured or underinsured motor vehicle insurance*."  (Emphasis added.)  State Farm has recognized in this case the applicability of the stacking provisions of §609(1)(c) by paying to the plaintiff underinsured motorist benefits available under a State Farm policy insuring "Quicksilver, Inc." and providing coverage for a Ford F350 pickup truck that was not involved in the accident.  The Ford F350 was licensed for use in Colorado and the applicable insurance policy selected Colorado law as controlling.

From this it is apparent, and State Farm does not argue otherwise, that the Kiplings are entitled to underinsured motorist benefits arising from any and insurance policies issued on QEC automobiles licensed to be operated in Colorado, where underinsured motorist coverage was not waived, and to the extent of the greater of all policy limits or the injuries sustained.

But that is not this case.  The issue here is whether the Kiplings can recover underinsured

motorist benefits contained in insurance policies on QEC automobiles issued by State Farm on automobiles located in Minnesota, intended to be driven principally in states other than Colorado, and not involved in the accident .  The case does not raise a question of contract interpretation, as State Farm argues.  Rather, it is a question of statutory interpretation--would Colorado courts apply section 10-4-609, C.R.S., to mean that the Kiplings are entitled to benefits under the Minnesota Policies.

The answer would not matter if Colorado and Minnesota law were the same.  They are not.  Minnesota law ties underinsured motorist coverage to the particular automobile involved in an accident and does not allow stacking.  Specifically, Minn. Stat. § 65B.49, subd. 3a(5) provides:

> If at the time of the accident the injured person is occupying a motor vehicle, the limit of liability for uninsured and underinsured motorist coverages available to the injured person is the limit specified for that motor vehicle.

In addition, Minn. Stat. § 65B.49, subd. 3a(6) states:

> Regardless of the number of policies involved, vehicles involved, persons covered, claims made, vehicles or premiums shown on the policy, or premiums paid, in no event shall the limit of liability for uninsured and underinsured motorist coverage for two or more vehicles be added together to determine the limit of insurance coverage available to an injured person for any one accident.

Thus, under Minnesota law the Kiplings are not entitled to underinsured motorist benefits arising from any policy other than that covering the Suburban, which have been fully paid.

The question before me is which state's law would Colorado courts apply--Colorado, which disallows tying coverage to a particular vehicle and allows stacking; or Minnesota, which allows recovery from only one underinsured motorist policy and limits that coverage to the

insurance policy of the vehicle involved in the accident.

The public policy underlying the Colorado underinsured motorist statute has been

summarized by the Colorado Supreme Court as follows:

> [W]e have consistently held that the legislative intent behind
> section 10-4-609 is to give Coloradans the opportunity to recover
> compensation for losses from their UIM insurer "in the same
> manner" and "to the same extent" as they would recover for such
> losses from a tortfeasor who was insured in amounts equal to the
> insured's UIM coverage.

USAA v. Parker,200 P.3d 350, 353 (Colo. 2009).  In addition, clauses in insurance contracts that

dilute the underinsured coverage mandated by section 10-4-609 violate Colorado public policy.

State Farm Mutual Automobile Ins. Co. v. Brekke, 105 P.3d 177, 180-81 (Colo. 2004).

The only case involving analogous facts--more limited insurance coverage obtained in

another state for an automobile generally operated there; consistent with the other state's law but

not with Colorado law; and involving an accident occurring in Colorado with injuries being

sustained by a Colorado resident--is Ranger v. Fortune Ins. Co., 881 P.2d 394 (Colo. App. 1994),

which I relied on in denying State Farm's Motion for Summary Judgment.  In Ranger, a Florida

resident obtained a policy from Fortune Insurance, a Florida corporation, insuring a car licensed

in Florida.  As permitted under Florida law, the insurance policy did not include personal injury

protection ("PIP") benefits.  The Florida car was driven to Colorado where it was involved in an

accident.  Mr. Ranger--the plaintiff, a Colorado resident, and a passenger in the Florida car--was

injured.  The state trial court applied Florida law and determined that no PIP benefits were

payable.  The Colorado Court of Appeals reversed, stating:

> In the area of multistate tort controversies, Colorado has adopted
> the general rule of applying the law of the state having the most
> "significant relationship" with the occurrence and the parties as

6

> contained in the Restatement (Second) Conflict of Laws § 145
> (1971). . . .
>
> [W]hen a tort rule is designed primarily to compensate the victim
> for his injuries, the state where the injury occurred, which is often
> where the plaintiff resides, may have the greater interest in the
> controversy.

Id. at 395.

The Colorado underinsured motorist statute is designed to compensate victims for their

injuries resulting from negligent, underinsured drivers.  USAA ,200 P.3d at 353.  Consequently,

despite the fact that insurance policies are contracts, the Colorado Court of Appeals

characterized the issue as involving "multistate tort controversies" and applied the most

significant relationship test of § 145 of the Restatement to determine which state's law to apply.

Here, the state with the most significant relationship to the occurrence is Colorado.  See Order

[Doc. # 54] at pp.  10-11.  Colorado law prohibits tying underinsured motorist coverage to a

particular automobile and allows stacking of underinsured motorist policies.

The cases cited by State Farm in its Motion to Reconsider are distinguishable and do not

persuade me that a Colorado court would reach a result different from that of the Colorado Court

of Appeals in Ranger.  Brekke considered whether a UM policy which required that the

negligence of the underinsured motorist be determined in an "actual trial," with a concomitant

right to a jury, impermissibly diluted the coverage mandated by section 10-4-609 and held that

the contract provision was contrary to Colorado public policy and unenforceable.  105 P.3d at

180-81.  Although the state Supreme Court distinguished contract claims from tort claims in its

analysis, the case provides no guidance on facts similar to those presented here.  USAA v. Parker

concerned which of two prejudgment interest rates should apply in an insurance coverage case.

7

200 P.3d at 259-60.  In determining that the interest statute applicable to tort claims applied, the state Supreme Court noted that "although Parker's right to recover benefits is contractual, the damages he seeks are damages for personal injuries."  Id. at 360.  Again, the case provides no guidance on the facts of the instant case.  Finally, Hock v. New York Life Ins. Co., 876 P.2d 1242 (Colo. 1994), dealt with whether to apply New York or Colorado law to the issue of rescission of an insurance contract by an out-of-state disability insurer.  The Colorado Supreme Court found that any error by the trial court was harmless, stating that "[a]lthough the laws of rescission of a contract in New York and Colorado are semantically different, it is a difference without any significance."  Id. at 1259.  Hoch provides no guidance under the facts of this case.

The heart of State Farm's argument appears in its Reply [Doc. # 76], where State Farm presents a series of hypothetical fact patterns and contends that the reasoning in my Order denying its Motion for Summary Judgment would lead to undesirable results.  One example will suffice to make the point.  State Farm asserts:

> State A legislatively determines that UM insurance applies through occupancy of a vehicle and is not personal.  (The opposite of Colorado.)  State A mandates that policies issued in that State must be limited to occupancy in a vehicle.  A State A resident who has a complying State Farm policy is a passenger in a friend's vehicle in Colorado.  Under this Court's ruling, that State A legislative declaration is voided and a contract which was issued in that State is forcibly modified by this Colorado court.  The only nexus is that the State A resident had a State Farm policy and came to Colorado.  This court's ruling creates the consequence that the mere presence of an individual in Colorado allows Colorado to forcibly alter the contract entered into in State A even though the insured vehicle never came to Colorado.  Under the Court's logic, the Colorado public policy that coverage is personal, not vehicle-oriented, allows it to force other States to comply with Colorado laws when the only nexus is the presence of a foreign citizen in Colorado.

Reply [Doc. # 76] at p. 6.

It is not obvious under the hypothetical facts that Colorado would have the most significant relationship with the occurrence within the meaning of § 145 of the Restatement (Second) Conflict of Laws resulting to the application of Colorado law.  That point aside, however, State Farm appears to argue that application of the Colorado underinsured motorist statute to reach the Minnesota Policies is a violation of the dormant Commerce Clause.  See, e.g., Southern Pacific Co. v. Arizona, 325 U.S. 761 (1945).  As the Supreme Court noted there:

> Although the commerce clause conferred on the national government power to regulate commerce, its possession of the power does not exclude all state power of regulation. . . .  [I]n the absence of conflicting legislation by Congress, there is a residuum of power in the state to make laws governing matters of local concern which nevertheless in some measure affect interstate commerce or even, to some extent, regulate it. . . .  Thus the states may regulate matters which, because of their number and diversity, may never be adequately dealt with by Congress. . . .  When the regulation of matters of local concern is local in character and effect, and its impact on the national commerce does not seriously interfere with its operation, and the consequent incentive to deal with them nationally is slight, such regulation has been generally held to be within state authority. . . .
>
> But . . . the states have not been deemed to have authority to impede substantially the free flow of commerce from state to state, or to regulate those phases of the national commerce which, because of the need of national uniformity, demand that their regulation, if any, be prescribed by a single authority.

Id. at 766-67 (internal citations omitted).

9

Whatever else might be said of State Farm's constitutional argument,[4] it is clear that the issue has not been properly presented.  To the contrary, Fed. R. Civ. P. 5.1 requires that a party challenging the constitutionality of a state statute must, if the state is not a party to the suit, file a notice of constitutional question and serve the notice on the state attorney general.  State Farm has not complied with those requirements.

Contrary to State Farm's argument, my Order [Doc. # 54] denying its Motion for Summary Judgment does not misapprehend controlling law, and State Farm has failed to persuade me that I should reconsider that Order.

---

[4]Interestingly, in Allstate Ins. Co. v. Hague, 449 U.S. 302 (1981), the Supreme Court held that the application of the forum state's (Minnesota) substantive uninsured motorist law was not constitutionally impermissible even though the motorcycle accident giving rise to the claim occurred in Wisconsin and involved Wisconsin residents.  The rule articulated by the Supreme Court in Hague is:

> [F]or a State's substantive law to be selected in a constitutionally permissible manner, that State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair.
>
> *    *    *
>
> Allstate was at all times present and doing business in Minnesota. By virtue of its presence, Allstate can hardly claim unfamiliarity with the laws of the host jurisdiction and surprise that the state courts might apply forum law to litigation in which the company is involved.  Particularly since the company was licensed to do business in the forum, it must have known it might be sued there, and that the forum courts would feel bound by forum law. Moreover, Allstate's presence in Minnesota gave Minnesota an interest in regulating the company's insurance obligations insofar as they affected . . . a Minnesota resident. . . .

Id. at 312-13, 317-18 (internal quotations and citations omitted).

IT IS ORDERED that the Motion to Reconsider [Doc. # 66] is DENIED.

Dated April 3, 2013.

BY THE COURT:

 s/ Boyd N. Boland
United States Magistrate Judge