**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 11-cv-01948-NYW-CBS

KATHRYN KIPLING,

      Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,
doing business as, Minnesota Division of State Farm Mutual Automobile
Insurance Company,

      Defendant.

---

**MEMORANDUM OPINION AND ORDER**

---

Magistrate Judge Nina Y. Wang

      This civil action is before the court on the following motions:

1. Defendant State Farm Mutual Automobile Insurance Company's ("State Farm" or "Defendant") Motion for Summary Judgment on Remand [#146, filed May 20, 2015];

2. Plaintiff Kathryn Kipling's ("Ms. Kipling" or "Plaintiff") Motion for Summary Judgment [#149, filed May 22, 2015]; and

3. Plaintiff's Motion to Strike Portions of Defendant's Motion for Summary Judgment ("Motion to Strike") [#150, filed May 29, 2015].

      These Motions are before me pursuant to 28 U.S.C. § 636(c), the Order of Reference dated January 26, 2012 [#19], the Order of Reassignment dated February 10, 2015 [#137], and D.C.COLO.LCivR 72.2.  This court has carefully considered the Motions and related briefing, the comments offered by counsel at the July 10, 2015 and August 20, 2015 Motions Hearings, the entire case file, and the applicable case law, and is sufficiently advised in the premises.

Based on that review, this court **GRANTS** Defendant's Motion for Summary Judgment, **DENIES** Plaintiff's Motion for Summary Judgment, and **GRANTS IN PART** and **DENIES IN PART** Plaintiff's Motion to Strike.

## FACTUAL BACKGROUND[1]

The following facts are undisputed unless otherwise noted. This civil action arises out of a fatal car collision that occurred on July 27, 2009 on Colorado Highway 285 when Jose Sanchez ("Mr. Sanchez"), driving a Ford F350 owned by Pedro Cabral-Martinez, crashed into the side of the vehicle in which Ms. Kipling, her husband, Christopher Kipling, and her mother, Maureen Hamilton, were traveling. [#1 at ¶¶ 1-4; #26-2]. The impact of the crash forced the Kiplings' vehicle off the highway into an embankment causing it to roll onto its passenger side where it ultimately rested. [*Id.* at ¶ 5; #26-2]. Mr. Kipling was fatally injured in the collision and Ms. Kipling was severely injured, and as a result, suffered a variety of non-economic and economic damages. [*Id.* at ¶¶ 7-9].

Mr. Sanchez was insured through the Cabral-Martinez vehicle by an American Family Insurance policy that provided for $100,000/300,000 bodily injury liability limits. The Kipling household maintained two auto insurance policies with State Farm. The Suburban was insured under policy number 0298-670-06F, which provided for $500,000/500,000 in uninsured motorist ("UIM") coverage. The second policy was issued in Colorado by State Farm to Quicksilver Express Courier on a 2005 Ford pickup and provided for $250,000/500,000 in UIM coverage (collectively, "Colorado Policies"). [#44-5]. Plaintiff settled her bodily injury liability claim

---

[1] State Farm incorporates into its Motion for Summary Judgment on Remand the Statement of Undisputed Material Facts as set forth in its original Motion for Summary Judgment. *See* [#146 at 2, n.1; #26 at 7-13]. Plaintiff, likewise, incorporates into her Response her original Response to Statement of Undisputed Material Facts as set forth in her Response in Opposition to Motion for Summary Judgment. [#162 at 2; #44 at 2-12].

against Mr. Sanchez and submitted a UIM claim with State Farm under the Colorado Policies. State Farm paid the limits of the UIM coverage under both policies, with a portion paid to Mrs. Hamilton.

At the time of his death, Mr. Kipling worked as an Office Manager for Quicksilver Express Courier of Colorado, Inc. [#26-1 at ¶ 7]. Quicksilver Express Courier, Inc. ("Quicksilver") originated as a Minnesota corporation in 1982. [*Id.* at ¶ 1; #44-2]. Quicksilver operates as a holding company and, since its origination, has opened operating subsidiaries in Minnesota, Colorado, Wisconsin, Missouri, and Arizona. [#47-2 at 7:14-17; #26-1 at ¶ 4].[2] Quicksilver originally conducted business only in Minnesota. [#26-1 at ¶ 5]. In 1986, Quicksilver organized Quicksilver Express Courier of Colorado, Inc. ("Quicksilver Colorado") as a wholly owned subsidiary. [#26-1 at ¶ 5; *compare* #44-3 *with* #44-6]. Quicksilver purchases and titles the vehicles used by its employees according to state. [#26-1 at ¶ 12]. Quicksilver pays for the insurance of each vehicle and those vehicles are titled in the state in which they are used; vehicles of one corporation are never used by another corporation. [*Id.* at ¶¶ 12, 13]. The individual employee is responsible for obtaining insurance for the vehicle from an agent in the state in which the vehicle is used. [*Id.* at ¶ 15]. Quicksilver then approves the coverage and pays for the business use portion of the premium. [*Id.*] The individual employees are taxed the corresponding percentage for their personal use of the vehicles, including insurance and fuel and all other expenses. [*Id.* at ¶ 13]. Each vehicle is parked at the office or home of the employee who uses it. [*Id.* at ¶ 14].

---

[2] One of the founders of Quicksilver clarified during deposition that Quicksilver maintains a controlling interest in the subsidiaries, which operate as independent corporations with revenue and liability of their own. [#149-1 at 47-48, 49].

On the day of the accident, Mr. Kipling was driving a 2005 Chevy Suburban (the "Suburban") that Quicksilver had provided him for his personal and business use. [#26-1 at ¶¶ 21, 40, 41; #26-2]. The Suburban was insured by State Farm in Colorado, titled to Quicksilver Colorado, and Quicksilver was the named insured. [#26-1 at ¶ 21; #26-12; #149 at ¶ 12]. As Mr. Kipling's vehicle was covered by a State Farm policy in Colorado, employees of Quicksilver and the Quicksilver corporation in Minnesota were similarly covered by State Farm policies. Relevant here are four policies that pertained to four vehicles registered in the State of Minnesota and titled to Quicksilver in Minnesota: no. 0539-563-23E; no. 71 6391-A08-23G; no. 327 4806-A01-23H; and no. 330-0729-A03-3C ("Minnesota Policies"). [#26-1 at ¶¶ 25-39]. The vehicle described in policy number 0539-563-23E is a 2006 Toyota Tacoma pickup truck. [#26-3]. The vehicle described in policy number 71 6391-A08-23G is a 2008 Toyota Sequoia. [#26-6]. The vehicle described in policy number 327 4806-A01-23H is a 2007 Toyota Camry. [#26-10]. The vehicle described in policy number 330-0729-A03-3C is a 2008 Toyota Corolla. [#26-8]. Michael Crary, Curt Sloan, Tony Gardner, and Dean Herbst are the four Quicksilver employees designated as the principal drivers of the four vehicles covered by the Minnesota Policies. [#26-1 at ¶¶ 11, 25, 29, 33, 37]. Quicksilver was listed as a named insured under the Minnesota Policies "so as to receive the proper notification of coverage limits and time frames." [#26-1 at ¶ 27]. Mr. Crary drove the 2008 Toyota Sequoia; Mr. Sloan drove the 2008 Toyota Corolla; Mr. Gardner drove the 2008 Toyota Camry; and Mr. Herbst drove the 2006 Toyota Tacoma.

Mr. Crary is the company's founder and chief executive officer. [#26-1 at ¶ 1]. Mr. Sloan has served as the corporate financial officer of Quicksilver since 1982 and owns 11 percent of the company's stock. [*Id.* at ¶ 9]. Mr. Herbst and Mr. Gardner have ownership interests of less than 6 percent each in Quicksilver stock. [*Id.* at ¶ 8]. Mr. Kipling had an

ownership interest of 3 percent in the company stock. [*Id.* at ¶ 7]. The Minnesota Policies were obtained from a Minnesota State Farm agent, Tim Meyer, in Shoreview, Minnesota. *See, e.g.,* [*id.* at ¶ 16; #26-3; #26-6; #26-8; #26-10]. The Minnesota addresses of Mr. Crary, Mr. Sloan, Mr. Gardner, and Mr. Herbst were used in determining the rates charged under the policies. [#26-5; #26-7; #26-9; #26-11]. State Farm is incorporated in Illinois [#149 at 22, ¶ 5], and the Minnesota Policies were executed by State Farm in Illinois. [#149-1 at 71, ¶ 10]. The State Farm agent who obtained the applications for and bound the Minnesota Policies, and the underwriters who reviewed and approved the applications, were located in Minnesota. [#149 at 30, ¶ 3].

The four Minnesota vehicles were driven only in Minnesota, and the Minnesota Policies were maintained in the individuals' names as the principal drivers. [#26-1 at ¶¶ 20, 24]. Neither Plaintiff nor her husband was the principal driver of any of the vehicles covered by the Minnesota policies; and those vehicles were never driven in Colorado. [*Id.* at ¶ 17]. On July 27, 2011, Ms. Kipling filed this lawsuit asserting one claim for breach of contract on the basis that State Farm has failed to pay benefits for uninsured/underinsured motorist coverage to which Ms. Kipling was entitled under the four Minnesota Policies, and seeking general and special damages plus interest. [#1 at 4, ¶¶ 19-23].

## PROCEDURAL HISTORY

### I.    District Court

State Farm filed an Answer on November 14, 2011. [#10]. On December 14, 2011, the Honorable Boyd N. Boland presided over a Scheduling Conference and entered a Scheduling Order. [#14, #15]. On April 17, 2012, State Farm filed a Motion for Summary Judgment, arguing that the Complaint presented a question of contract interpretation; the court should apply

Minnesota law; and, under Minnesota law, Plaintiff cannot stack the UIM benefits of the Minnesota Policies. [#26]. Defendant first asserted that the contract governing the Minnesota policies contains a choice of law provision providing for Minnesota law, even under general conflict of law rules Minnesota law would apply, and Minnesota law does not permit the stacking of UIM policies. Defendant then argued that even if Minnesota law did not apply, Plaintiff is not entitled to the UIM benefits in the Minnesota Policies because the Suburban is not a covered vehicle pursuant to those policies and neither Plaintiff nor Mr. Kipling qualified as an insured as defined under the UIM vehicle coverage contained in the Minnesota Policies.

Following multiple requests for extensions of time that the court granted, Plaintiff filed a Response on September 11, 2012. [#44]. Ms. Kipling countered that the sole claim for relief asserted in the Complaint sounds in tort; that in multi-tort controversies, Colorado courts apply the rule of law of the state with the most significant relationship to both the occurrence and the parties; and that Colorado law should govern her claim. [*Id.*]. Plaintiff next argued that under Colorado law, which invalidates any insurance policy provision that seeks to tie the payment of UIM benefits to the occupancy of a particular vehicle, she is entitled to the limits of UIM coverage under the Minnesota Policies. Finally, she contested Defendant's assertion that Mr. Kipling does not qualify as an insured under the policies.

Defendant filed a Reply on September 25, 2012. [#47]. Plaintiff sought and was granted leave to file a Sur-reply, which she submitted on October 17, 2012. [#52]. On November 29, 2012, the court heard oral argument on the Motion for Summary Judgment, at which the Parties agreed that Plaintiff does not qualify as an insured under the language of the Minnesota Policies. [#54 at 5]. The court then took the matter under advisement.

On November 6, 2012, Magistrate Judge Boland denied State Farm's Motion for Summary Judgment. [#54]. Judge Boland first found that Plaintiff "is not entitled to benefits under the plain language of the Minnesota Policies." [*Id.* at 5]. However, he then found that the Colorado conflict of laws rule applicable to tort claims should apply, and for support relied on *Ranger v. Fortune Ins. Co.*, 881 P.2d 394 (Colo. App. 1994)). [*Id.* at 9-10]. In so finding, and in considering which state had the most significant relationship to the occurrence and the Parties, Magistrate Judge Boland determined that Colorado law controlled the resolution of the lawsuit, and under Colorado law, Ms. Kipling was entitled to proceed to trial to determine damages.

On February 21, 2013, State Farm filed a Motion for Reconsideration of the Order denying its Motion for Summary Judgment or, in the alternative, Motion for Determination of Question of Law, arguing that two consolidated Colorado Supreme Court cases, *State Farm Mutual Automobile Insurance Co. v. Brekke* and *State Farm Mutual Automobile Insurance Co. v. Shaffer,* 105 P.3d 177 (Colo. 2004) and *State Farm Mutual Automobile Insurance Co. v. Shaffer,* 105 P.3d 177 (Colo. 2004), draw the distinction between a plaintiff's negligence claims against the UM motorist and the plaintiff's contract claims for uninsured motorist ("UM") benefits against the plaintiff's UM insurer, and instruct that the conflict of laws rule applicable to contracts should govern Plaintiff's claim. [#66]. Ms. Kipling filed a Response on March 25, 2013 [#75], and State Farm filed a Reply on April 1, 2013. [#76]. Magistrate Judge Boland denied the Motion for Reconsideration on April 3, 2013. [#81]. The court subsequently held a three-day jury trial, which commenced May 13, 2013. [#91-#94]. The jury ultimately returned a verdict in favor of Plaintiff, and the court entered a final judgment of $4,444,750.75 on May 28, 2013. [#99].

On June 14, 2013, State Farm filed a Motion to Alter or Amend the Judgment Pursuant to Fed. R. Civ. P. 59(e), arguing for the first time that in applying Colorado law to reform the Minnesota Policies, Plaintiff and Mr. Kipling did not qualify as insureds under those policies. [#103]. Defendant asserted that "[i]t is neither contrary to the Colorado UM/UIM statute, nor against public policy, to define who is an 'insured' in terms of vehicle occupancy when dealing with persons other than an individual named insured and his or her resident relatives," and "when the named insured is a business or corporation, UM/UIM coverage arises only when such persons are using or occupying a covered vehicle." [#103 at 2]. State Farm then filed a Motion to Stay Execution of the Judgment Pending Resolution of Appeal [#104], to which Plaintiff responded on June 21, 2013 [#107]. On July 16, 2013, Plaintiff filed a Response to the Motion to Alter or Amend [#113]. State Farm filed a Reply on July 16, 2013. [#114]. On September 3, 2013, the court denied the Motion to Alter or Amend, primarily on the basis that the Motion was "an improper attempt to advance a new argument which could and should have been raised prior to trial and entry of judgment," finding that Defendant's argument implicated and sought to limit and define several state court cases that had not previously been cited to or discussed. [#118 at 3]. On September 6, 2013, the court granted the stay for execution of the judgment. [#119].

## II.     Tenth Circuit Appeal

On September 17, 2013, State Farm filed a Notice of Appeal to the United States Court of Appeals for the Tenth Circuit ("Tenth Circuit" or "Circuit Court"). [#120]. Defendant thereafter raised the following two arguments: "(1) even under Colorado law the Minnesota Policies would not provide UIM benefits to Plaintiff because Colorado law does not prohibit tying UIM coverage to occupancy of the insured vehicle; and (2) the district court erred in applying tort conflict-of-laws principles in resolving which state's substantive law governed Plaintiff's

claim." *Kipling v. State Farm Mutual Automobile Ins. Co.*, 774 F.3d 1306, 1307, 1312 (10th Cir. 2014).

On December 29, 2014, the Tenth Circuit issued a published opinion, in which it rejected State Farm's first argument for failure to have timely raised it before the district court, but agreed with State Farm's second argument. *Id.* at 1308. The Tenth Circuit then held that the district court erred by not applying contract conflict-of-laws principles, and reversed and remanded the decision for further proceedings, "including reconsideration of what state's substantive law governs this dispute." *Id.* at 1312. In addition, the court noted in the section of the opinion describing the background of the case that each of the Minnesota Policies describes the covered vehicle on the declaration page as "YOUR CAR," and the UIM coverage provision defines "insured" to mean "any person while occupying: (a) your car; (b) a newly acquired car; or (c) a temporary substitute car," and therefore "the Kiplings would not be eligible for UIM coverage under any of the Minnesota Policies because they were not occupying any of the insured vehicles when they were injured." *Kipling*, 774 F.3d at 1308. The Circuit Court also noted that the Parties did not dispute that Plaintiff is not entitled to coverage if Minnesota law applies. *Id.* On January 20, 2015, the Tenth Circuit issued the mandate consistent with its order, which State Farm filed with the District Court the same day. [#133].

## III.    Remand to District Court

On February 10, 2015, this matter was reassigned to the undersigned Magistrate Judge. [#137]. On March 5, 2015, this court held a Status Conference at which the undersigned set deadlines by which the Parties would complete limited written discovery and file motions for summary judgment limited to the conflicts of law issue. [#138].

On May 20, 2015, State Farm submitted its Motion for Summary Judgment on Remand, along with fourteen pages of exhibits.  [#146, #146-1, #146-2, #146-3].  On May 29, 2015, Plaintiff submitted her Motion for Summary Judgment along with 182 pages of exhibits.  [#149, #149-1, #149-2].  The same day, Plaintiff filed the Motion to Strike.  [#150].  Defendant filed a Response to the Motion to Strike on June 8, 2015 [#153], and Plaintiff filed a Reply on July 1, 2015.  [#158].  On July 10, 2015, this court heard oral argument on, and took under advisement, the Motion to Strike, and set further oral argument to be heard on the Motions for Summary Judgment.  [#159].  On July 30, 2015, Plaintiff filed a Response to Defendant's Motion for Summary Judgment on Remand.  [#160].  The following day, Defendant filed a Response to Plaintiff's Motion for Summary Judgment.  [#161].  Also on July 31, 2015, Plaintiff filed an Amended Response in Opposition to Defendant's Motion for Summary Judgment on Remand. [#162].  The court considers that filing as the operative response to the Motion.  The Parties completed oral argument at a hearing held on August 20, 2015, at which the undersigned took the Motions under advisement.  [#163].

## STANDARD OF REVIEW

The purpose of a summary judgment motion is to assess whether trial is necessary.  *White v. York Int'l Corp.,* 45 F.3d 357, 360 (10th Cir. 1995).  Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Henderson v. Inter–Chem Coal Co., Inc.,* 41 F.3d 567, 569 (10th Cir. 1994). "A 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'"  *Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014) (quoting *Anderson v. Liberty Lobby,* 477 U.S. 242, 249 (1986)).

Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or conversely, is so one-sided that one party must prevail as a matter of law. *Anderson,* 477 U.S. at 248–49; *Stone v. Autoliv ASP, Inc.,* 210 F.3d 1132, 1136 (10th Cir. 2000); *Carey v. U.S. Postal Service,* 812 F.2d 621, 623 (10th Cir. 1987). A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable juror could return a verdict for either party. *Anderson,* 477 U.S. at 248. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *First Nat. Bank of Ariz. v. Cities Service Com*, 391 U.S. 253, 289 (1968)).

In reviewing a motion for summary judgment, the court views all evidence in the light most favorable to the non-moving party. *See Garrett v. Hewlett-Packard Co.,* 305 F.3d 1210, 1213 (10th Cir. 2002). Under Rule 56(c), the moving party bears the initial burden of presenting evidence to show the absence of a genuine issue of material fact. *Trainor v. Apollo Metal Specialties, Inc.,* 318 F.3d 976, 979 (10th Cir. 2003). In this circuit, "[t]he moving party carries the burden of showing beyond a reasonable doubt that it is entitled to summary judgment." *Id.* (quoting *Hicks v. City of Watonga,* 942 F.2d 737, 743 (10th Cir. 1991)) (internal quotation marks omitted). Once this burden is met, Rule 56(e) requires the non-moving party to set forth specific facts showing there is a genuine issue for trial. *Id.* (citing *Hom v. Squire*, 81 F.3d 969, 973 (10th Cir. 1996). *See also Kannady v. City of Kiowa*, 590 F.3d 1161, 1168-69 (10th Cir. 2010). "If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything…[and] the nonmoving party may defeat the motion for summary

judgment without producing anything." *Trainor*, 318 F.3d at 979 (quoting *Nissan Fire &*

*Marine Ins. Co. v. Fritz Cos.,* 210 F.3d 1099, 1102 (9th Cir. 2000)).

**ANALYSIS**

## I.   Motion to Strike

The court first considers Ms. Kipling's Motion to Strike, as its outcome could have an

effect upon the substantive arguments offered by the Parties with respect to the cross Motions for

Summary Judgment.   Ms. Kipling asks the court to strike two of three arguments raised by

Defendant in its Motion for Summary Judgment on Remand: (1) the Choice of Law provision in

the Minnesota policies mandates the application of Minnesota law to those policies; and (2)

Colorado's UIM statute does not apply to the Minnesota Policies because they were not

"delivered or issued for delivery in [Colorado] with respect to any motor vehicle licensed for

highway use in [Colorado]."   [#146 at 6].   In so moving, Plaintiff asserts that these arguments

violate the mandate issued by the Tenth Circuit in the order reversing and remanding this

proceeding to district court, and that Defendant has waived the argument regarding application of

Colorado's UIM statute.   [#150 at 2].   State Farm responds that Plaintiff's interpretation of the

mandate is too narrow.   Defendant argues in particular that whether the contracting parties

agreed on the application of a certain forum's law is a question squarely within the contract

conflict-of-laws analysis, and that Colo. Rev. Stat. § 10-4-609 is pertinent to Plaintiff's "ongoing

contentions that under the conflict-of-laws analysis, including contract principles, Colorado's

interests override Minnesota's due to the public policy expressed in C.R.S. § 10-4-609."   [#153

at 2-3].

## A.     Legal Standard

"[W]hen a case is appealed and remanded, the decision of the appellate court establishes the law of the case and ordinarily will be followed by both the trial court on remand and the appellate court in any subsequent appeal." *Roth v. Green*, 466 F.3d 1179, 1187 (10th Cir. 2006) (quoting *Rohrbaugh v. Celotex Corp.,* 53 F.3d 1181, 1183 (10th Cir. 1995)).  The law of the case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'"  *Roth*, 466 F.3d at 1187 (quoting *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 816, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988) (further citation omitted)).   "As it is most frequently applied, law of the case encompasses a lower court's adherence to its own prior rulings, to the rulings of its superior court in the case, or to the rulings of another judge or court in the same case or a closely related case." *Aguinaga v. United Food & Commercial Workers Int'l Union,* 854 F. Supp. 757, 773 (D. Kan. 1994).  With regard to a district court's adherence to its own prior rulings, "questions that have not been decided do not become law of the case simply because they could have been decided." *Id.*  "However, law of the case principles may apply when a court concludes that an issue was decided implicitly."  *Id.* (citing 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4478, at 789 (1981)).  *See also Cherokee Nation v. Oklahoma,* 461 F.2d 674, 678 (10th Cir. 1972), *cert. denied*, 409 U.S. 1039, 93 S.Ct. 521, 34 L.Ed.2d 489 (1972) ("The rule that a lower court must follow the decision of a higher court at an earlier stage of the case applies to everything decided either expressly or by necessary implication.") (citation omitted).

The second category of the law of the case is known as the mandate rule.  "The mandate rule is a corollary to the law of the case [doctrine] requiring trial court conformity with the appellate court's terms of remand."  *U.S. v. West*, 646 F.3d 745, 748 (10th Cir. 2011).  *See also*

*Zinna v. Congrove,* 755 F.3d 1177, 1182 (10th Cir. 2014) (holding that the mandate rule "provides that a district court must comply strictly with the mandate rendered by the reviewing court"). While lower courts are bound under the mandate rule to honor the mandate of a superior court, "lower courts are free to decide issues that were not resolved in a prior appeal, as long as the case remains open for further proceedings." *Aguinaga*, 854 F. Supp. at 773 ("The issue presented by the Union was not resolved by the Tenth Circuit in the prior appeal, and the court does no violence to the mandate rule by considering the issue herein"). In the Tenth Circuit, there is a presumption in favor of a general remand:

> the scope of the mandate on remand is carved out by exclusion: unless the district court's discretion is specifically cabined, it may exercise discretion on what may be heard. Therefore we do not make inquiry into whether the issue presented is antecedent to or arises out of the correction on appeal. Instead the district court is to look to the mandate for any limitations on the scope of the remand and, in the absence of such limitations, exercise discretion in determining the appropriate scope.

*West*, 646 F.3d at 749. *See also Dish Network Corp. v. Arrowood Indem. Co.*, 989 F. Supp. 2d 1137, 1143 (D. Colo. 2013) ("Although a district court is bound to follow the mandate, and the mandate controls all matters within its scope,…a district court on remand is free to pass upon any issue which was not expressly or impliedly disposed of on appeal.") (citation omitted), *aff'd* 772 F.3d 856, 862 (10th Cir. 2014).

The third category of law of the case relates to "the amount of deference one judge or court owes to the rulings of another judge or court in the same case or in a closely related case." *Aguinaga*, 854 F. Supp. at 773. The fourth and final category arises under circumstances where the court permits preclusive effect to a ruling that could have been appealed, but has been abandoned by a failure to do so. *Id.* (citing 18 C. Wright, § 4478, at 801). "Under this category

of law of the case, lower court rulings become binding on higher courts through failure to preserve an issue for review." *Id.*

## B.    Application

On appeal, the Tenth Circuit affirmatively decided two issues: (1) State Farm was foreclosed from arguing that Colorado law does not prohibit tying UIM coverage to occupancy of the insured vehicle, and thus Plaintiff is not entitled to UIM benefits under the Minnesota Policies even under the application of Colorado law because it failed to raise it in a timely fashion before the District Court; and (2) contract, rather than tort, conflict-of-law analysis should govern which state's substantive law applies. *Kipling*, 774 F.3d at 1308. These two respective holdings guide this court's interpretation of the scope of the remand.

### 1.    *Argument Regarding Choice of Law Provision*

State Farm asserts as its first basis for summary judgment that the contracted choice of law provision in the Minnesota Policies "mandates application of Minnesota law to interpretation of the Minnesota Policies." [#146 at 3]. Plaintiff first argues the court should strike this argument as contravening the mandate. Specifically, "the question of whether the Choice of Law provision in the Minnesota Policies is applicable to this dispute…[is not]…encompassed within the specific Tenth Circuit mandate to apply the Restatement (Second) Conflict of Laws (1971)…principles applicable to contract actions to determine which state's substantive law governs this dispute." [#150 at 3].

Based on my review of the docket and the applicable law, I respectfully find that Plaintiff reads the mandate too narrowly. First, the presumption within this Circuit is in favor of a general remand. *West*, 646 F.3d at 749. Next, the Tenth Circuit unequivocally directed this court to begin its analysis of Plaintiff's claim by applying Colorado's contract conflict-of-laws principles,

which includes consideration of applicability of any choice-of-law provision within the contract. The Restatement (Second) Conflict of Laws ("the Restatement (Second)") § 187(2) provides, in pertinent part:

> The law of the state chosen by the parties to govern their contractual rights and duties will be applied ... unless ...
>
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

*See King v. PA Consulting Grp., Inc.*, 485 F.3d 577, 585 (10th Cir. 2007).[3]   Nothing in the Tenth Circuit's decision suggests that this court should not engage in a complete analysis under the conflict-of-laws principles that apply to contract actions by omitting consideration of § 187 of the Restatement (Second).  In addition, as discussed in more detail below, the application of § 187 necessarily requires the court to consider what state has the most significant relationship to the contractual transaction and the Parties.

The court is also not persuaded by Plaintiff's arguments that it should "restrain from reconsidering the prior court's decision that the choice of laws provision does not apply." [#158 at 2 (citing State Farm's Response [#153 at 5, 7])].  This court respectfully disagrees that Defendant's argument based on the contractual choice of law provision has been previously decided.  While State Farm raised the matter of a choice of law provision in its original Motion for Summary Judgment, it became a moot point when the court determined that the claim

---

[3] Under most circumstances, this is the court's first inquiry, and may obviate the need to consider which state has the most significant relationship to the transaction and the parties.  *See* Restatement (Second) § 188 "Law Governing in Absence of Effective Choice by the Parties." *See also, America Exp. Financial Advisors, Inc. v. Topel*, 38 F. Supp. 2d 1233, 1238 (D. Colo. 1999) ("Generally, Colorado enforces contractual choice of law provisions, and follows the Restatement (Second) of Conflict of Laws for Contracts, § 187, in determining the enforceability of these provisions.").

sounded in tort.  [#54].  Indeed, Magistrate Judge Boland noted that "there was no dispute about the meaning of any policy provision."  [*Id.* at 8].   In disposing of State Farm's Motion for Reconsideration, Magistrate Judge Boland further noted "[t]he case does not raise a question of contract interpretation, as State Farm argues."  [#81 at 5].

The Tenth Circuit also did not determine whether the Minnesota Policies contained an enforceable choice of law provision.  And contrary to Plaintiff's assertion, the court is not permitting State Farm to "relitigate all of the issues previously argued and decided in this case." [#150 at 7 n.4].  Instead, the court is considering both Parties' arguments for the first time in the context of conflict-of-law analysis as applied to contract actions.

2.     *Argument Regarding Interpretation of Colorado Law*

The court next turns to Plaintiff's argument that State Farm should be precluded from seeking summary judgment based on the theory that Colo. Rev. Stat. § 10-4-609(1)(a) does not apply to the Minnesota Policies because they were not "delivered or issued for delivery in this state with respect to any motor vehicle licensed for highway use in this state."  [#146 at 6]. Plaintiff contends that this argument violates the Tenth Circuit's mandate or, alternatively, is subject to waiver.

The Tenth Circuit's mandate remanded the matter "for further proceedings, *including* reconsideration of what state's substantive law governs this dispute." *Kipling*, 774 F.3d at 1313 (emphasis added).  Under the mandate, the court begins its analysis of Plaintiff's claim with the application of Colorado's contract conflict-of-laws principles to determine whether Colorado or Minnesota substantive law applies.  The Circuit Court did not advise as to what conclusion the court should reach.  Nor does the mandate instruct, either expressly or by implication, how the court should apply or interpret the relevant substantive law once it determines which state's law

controls.  Accordingly, I find that if Colorado law governs Plaintiff's claim pursuant to a contract conflict-of-laws analysis, then nothing in the Tenth Circuit's mandate precludes this court from considering how Colorado law applies to the Minnesota Policies. *Cf. Dish*, 772 F.3d at 865-66 ("The important point is that nothing in the remand language in DISH I specifically limited or prevented the district court from allowing the Insurers to dispute the purported duty to defend on grounds other than those that were asserted in the Insurers' original motions for summary judgment").

Nevertheless, the court's consideration of whether this issue has been waived depends upon how State Farm intended the argument to be applied, *i.e.*, as an application of substantive Colorado law that results in the disposition of Ms. Kipling's breach of contract claim, or as just one argument among many in considering the competing policy interests between Colorado and Minnesota as considered under the Restatement (Second).[4]  To the extent State Farm argues that *even applying Colorado substantive law*, Ms. Kipling's recovery under the Minnesota Policies would be precluded under Colo. Rev. Stat. § 10-4-609(1)(a), this court finds that State Farm has waived such argument.  State Farm could certainly have argued below, but did not, that even under the application of Colorado law, the statute "applies only to liability insurance policies issued or delivered in Colorado that directly concern or have a demonstrable relationship to 'any motor vehicle licensed for highway use in this state.'" *Apodaca v. Allstate Ins. Co.*, 255 P.3d 1099, 1102, 1105 (Colo. 2011) (en banc).  In its Order denying summary judgment, the district

---

[4] It is somewhat unclear whether State Farm intended to use this argument as dispositive even if Colorado law applied, or as simply one factor in the court's contract conflict-of-laws analysis under the Restatement (Second).  *See Kipling*, 774 F.3d at 1312 ("Plaintiff relies on the policy reasons behind Colorado's UIM statute as requiring the state's law to govern here. But the forum state's public policy, which is always a consideration under the Restatement, *see* § 6(b), is not a factor in deciding *which* conflict-of-laws principles – those for tort, contract, or otherwise – govern.  It is simply one element to be considered along with others once the set of governing principles has been chosen.")  Therefore, this court considers each in turn.

court observed, "the operative issue was 'whether the Colorado underinsured motorist statute, section 10-4-609(1)(a), C.R.S., as interpreted, allows the plaintiff to collect benefits under the Minnesota Policies.'" [#54 at 8]. Therefore, it is clear that the interpretation of Colo. Rev. Stat. § 10-4-609(1)(a) was squarely before the court and the Parties were on notice that they needed to raise any issues of statutory interpretation or application of the Colorado UIM statute prior to trial.

The argument that Ms. Kipling's recovery under the Minnesota Policies would be precluded under a substantive application of Colo. Rev. Stat. § 10-4-609(1)(a) is similar to the argument that the substantive application of the statute does not prohibit tying UIM coverage to the occupancy of the insured vehicle.   The Tenth Circuit affirmed the district court's determination that this issue had not been properly raised before trial.  *See Kipling*, 774 F.3d at 1308-1310.  As the Tenth Circuit noted, all three arguments State Farm advanced prior to trial each assumed that Minnesota law applied.  *Id.* at 1309. The Tenth Circuit implicitly determined on appeal that State Farm did not timely raise to the trial court arguments that even if Colorado law applied, Ms. Kipling would still not recover.[5]  This court's review confirms that at best, if State Farm raised the argument that a substantive application of Colorado law would dispose of Ms. Kipling's claim, it did so for the first time on Reply in support of its motion for summary judgment, and then did not raise the court's denial of this issue on appeal.   Accordingly, this court finds such argument waived.  *See Garcia v. Int'l Elevator Co., Inc.*, 358 F.3d 777, 781-82 (10th Cir. 2004).

---

[5] "An issue may be implicitly resolved by a prior appeal in three circumstances: (1) resolution of the issue was a necessary step in resolving the earlier appeal; (2) resolution of the issue would abrogate the prior decision and so must have been considered in the prior appeal; and (3) the issue is so closely related to the earlier appeal its resolution involves no additional consideration and so might have been resolved but unstated." *Dobbs v. Anthem Blue Cross & Blue Shield,* 600 F.3d 1275, 1279 (10th Cir. 2010) (citation omitted).

However, to the extent that State Farm contends the court should consider the language of Colorado's UIM statute as just one factor in weighing the competing policy interests under the conflict-of-law principles as applied to contract actions, this court finds such consideration is appropriate. In arguing that Colorado law controls, Ms. Kipling argues that "[t]he substantive law of another jurisdiction should not apply if the application of that law would violate a fundamental policy of the forum." [#149 at 9]. Plaintiff then goes on to argue, in depth, the policy considerations underlying Colo. Rev. Stat. § 10-4-609(1)(a) and concludes that Colorado's is the "stronger policy in favor of ensuring that victims of auto accidents are compensated fully for their injuries, and this policy outweighs any expectation by State Farm that no state's laws besides Minnesota's would ever apply to the UM/UIM coverage in the Minnesota contracts." [*Id.* at 13]. To preclude State Farm from arguing, but more importantly, this court from considering, all of the language of Colo. Rev. Stat. § 10-4-609(1)(a) in determining what policy considerations underpin Colorado's UIM statute as part of its conflict-of-law analysis "in the first instance" would inappropriately limit the analysis in which the Tenth Circuit has directed this court to engage.

Accordingly, this court GRANTS Plaintiff's Motion to Strike insofar as this court finds that State Farm has waived any argument that even if Colorado law applies, the plain language of Colo. Rev. Stat. §10-4-609(1)(a) precludes recovery, but otherwise DENIES the Motion.[6]

## II.    Choice of Law Analysis

The court now turns to applying Colorado's contract conflict-of-laws principles to determine which state's substantive law governs Plaintiff's claim. The outcome of the choice of

---

[6] Ultimately, however, this ruling has little practical effect. Even without considering the arguments made by State Farm that Ms. Kipling seeks to preclude, this court would still conclude that Minnesota substantive law applies under an analysis according to § 188 of the Restatement (Second), as discussed in detail below.

law analysis is dispositive, as both the Tenth Circuit and this court recognize that "the parties did not dispute that if Minnesota law applied, Plaintiff was not entitled to coverage," 774 F.3d at 1308, and if Colorado law applies, there is no reason to disturb the prior verdict.

**A.    Legal Standard**

A federal court sitting in diversity applies the conflict of law rules of the forum state. *See Klaxon Co. v. Stentor Electric Manufacturing,* 313 U.S. 487, 497 (1941). *See also Security Service Federal Credit Union v. First American Mortgage Funding, LLC,* 861 F. Supp. 2d 1256, 1267 (D. Colo. 2012).   Colorado has adopted the choice of law principles set forth in the Restatement (Second) of Conflict of Laws, and will apply the law of the state having "the most significant relationship" to the particular issue in dispute. *Wood Brothers Homes, Inc. v. Walker Adjustment Bureau,* 601 P.2d 1369, 447–48 (Colo. 1979).

As discussed above, § 187 of Restatement (Second) provides that the law of the state chosen by the parties to govern their contractual rights *will be applied* unless either:

> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

Restatement (Second) of Conflict of Laws, § 187(1) and (2) (emphasis added).   Therefore, even within the analysis under § 187, this court must consider what state's substantive law would apply.

In the absence of a state statute that governs the choice of law analysis, the factors relevant to the choice of the applicable rule of law include:

> (a) the needs of the interstate and international systems; (b) the relevant policies of the forum; (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; (d) the protection of justified expectations; (e) the basic policies underlying the particular field of law; (f) certainty, predictability and uniformity of result; and (g) ease in the determination and application of the law to be applied.

Restatement (Second), § 6. In addition, "in the absence of an effective choice of law by the parties," § 188 of Restatement (Second) provides that the law of the state with the most significant relationship to the transaction and the parties, with respect to the issue at hand, should govern the parties' contractual rights and duties. Restatement (Second), § 188(1). In determining what state has the most significant relationship, the court should consider the following factors:

> (a) the place of contracting;

> (b) the place of negotiation of the contract;

> (c) the place of performance;

> (d) the location of the subject matter of the contract; and

> (e) the domicile, residence, nationality, place of incorporation and place of business of the parties.

Restatement (Second), § 188(2). "These contacts are to be evaluated according to their relative importance with respect to the particular issue." [*Id.*] And, beneficiaries to a contract are "subject to any limitations imposed by the terms of the contract." Comment B to Restatement (Second) of Conflict of Laws, § 309(4).

As noted by the Tenth Circuit, pursuant to § 193:

> The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more

significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.

Restatement (Second), § 193; *Kipling*, 774 F.3d at 1311. *See Mitchell v. State Farm Fire & Cas. Co.*, 902 F.2d 790, 793 (10th Cir. 1990) ("[I]n jurisdictions following the "most significant relationship" test, the law of the state in which the insured property, object or other risk is located normally governs issues concerning the validity or effect of the insurance contract.") (citations omitted). The term "casualty insurance" includes "theft insurance, liability insurance, collision insurance, workmen's compensation insurance and fidelity insurance." Comment a to Restatement (Second) § 193. Against these principles, the court now considers the Parties' respective arguments as to whether Minnesota or Colorado substantive law applies.

**B.    Application**

1.    *Forum Selection Clause*

As instructed by § 187 of Restatement (Second), this court first considers whether there exists an enforceable choice of law provision within the Minnesota Policies agreed to by the contracting parties. State Farm contends there is.[7] Section 15 of the Minnesota Policies is titled "Choice of Law" and contains the following language: "without regard to choice of law rules, the law of the state of Minnesota will control [with exception] in the event of any disagreement as to the interpretation and application of any provision in this policy." [#26-13 at 46].[8] According to

---

[7] Plaintiff does not advance an argument regarding the choice of law provision, other than to reassert that the court's prior finding that the construction or interpretation of the insurance policies is not in dispute, is the law of the case, and should not be revisited. [#149 at 8 n.1]. As discussed above, this court does not find that the law of the case to date includes a determination of the applicability of the Minnesota choice of law provision.

[8] Defendant states that Plaintiff's claims are "primarily brought under the State Farm Policy for the Quicksilver owned 2006 Toyota Tacoma Pickup," used by Dean Herbst, policy no. 0539-563-23E. [#26 at 13-14]. Defendant asserts that each policy at issue contains identical policy language and endorsements and operates under the same terms, and thus it uses the 2006 Toyota

the excepting language, Illinois law will control any disagreement relating to the interpretation and application of the policy's "(1) Mutual Conditions provision [on the current] Declarations Page," in the instance where State Farm Mutual Automobile Insurance Company issued the policy, and the "(2) Participating Policy provision [on the current] Declarations Page," in the instance where a subsidiary or affiliate of State Farm Mutual Automobile Insurance Company issued the policy.  [*Id.*].  As previously noted, both the district court and the Tenth Circuit have recognized that in this case, there is no issue with respect to interpretation of the words of the contract, and Plaintiff has not identified any issue or any disagreement as to the interpretation and application of the terms of the policy.  [#81 at 5].  The plain language of this provision identifies Minnesota law as controlling.

The court further finds that this is not a case in which the state designated by the contractual choice-of law clause has "no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice."  As discussed below, the undisputed facts demonstrate that Minnesota is where the contracting Quicksilver is incorporated; where the individuals named on the Minnesota Policies lived and worked; where the insurance was sought and purchased; and where the insured vehicles named in the Minnesota Policies were routinely used.  Minnesota, the chosen state, thus has a substantial relationship to the parties and the transaction.  *See* Comment f to Restatement (Second) § 187 (the "substantial relationship" requirement is satisfied if one of the parties is domiciled or has its principal place of business in the state of the chosen law, or  if the state of the chosen law is where performance by one of the parties is to take place).  *Cf. Topel*, 38 F. Supp. 2d at 1238.  The Comments elucidating Section 187 acknowledge that "[w]hen the state of the chosen law has some

Tacoma Pickup policy as "the model for all Minnesota policies."  [#26 at 14; #146 at 3 n.2]. Plaintiff does not dispute the basis for or otherwise contest this approach.

24

substantial relationship to the parties or the contract, the parties will be held to have had a reasonable basis for their choice." Comment f to Restatement (Second) § 187.

The second paragraph of § 187 next directs the court to consider whether the application of Minnesota law would be:

> contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

Restatement (Second), § 187(2).  Therefore, the court also considers which state has the greater interest in determining the particular issue, and which state, under the rule of § 188, would be the state of the applicable law absent the choice-of-law provision in the Minnesota Policies.

### 2.   *Most Significant Relationship Test*

This court begins its analysis under § 188 by considering the contacts specified in § 188(2) in applying the policy considerations enumerated in § 6.  It is clear from the undisputed facts that Minnesota is the location of each of the five events considered in § 188(2).  The four Quicksilver employees named as the principal drivers of the vehicles covered by the Minnesota Policies lived and worked in Minnesota.  *See, e.g.,* [#146-1 at 13, 14, 28, 29, 42, 43, 56, 57; #146-3 at ¶¶ 11, 19, 27, 36].[9]  These individuals sought automobile insurance coverage from a State Farm agent whose office was located in Minnesota.  *See, e.g.,* [#26-1 at ¶ 16].  The Minnesota Policies were underwritten in Minnesota.  [#146-3 at ¶¶ 12, 20, 29, 38].  The place of

---

[9] Plaintiff takes issue with certain paragraphs included in the affidavit of Tim Meyer, offered by State Farm in his capacity as the insurance agent whose "predecessor sold the original State Farm Policy Number 53 9563-A01-23E."  [#146-1 at ¶ 9].  Plaintiff challenges certain of Mr. Meyer's attestations on the basis that he was never disclosed, Plaintiff has not had an opportunity to conduct discovery regarding his statements, and the statements "have no apparent or obvious basis in fact and are not based on personal knowledge."  [#162 at 2].  However, I find independent support in the record for the fact that the designated principal users of the vehicles covered by the Minnesota Policies lived and worked in Minnesota.  *See, e.g.,* [#26-1 at ¶¶ 10, 29, 33].

contracting and negotiation of the contract was Minnesota.  [#146-1 at ¶¶ 17-18, 32-33, 46-47, 60-61].  The Quicksilver corporation that approved of and authorized the policies was either the holding company, Quicksilver, or the Minnesota subsidiary, and was thus incorporated in and held its principal place of business in Minnesota.  *See* [#149-1 at 68 ("Quicksilver paid for the vehicle, whether it be Inc. or Minnesota. It depended on the time going back 30 years")].  The contracting parties' expectation was that the insured vehicles would be used only in Minnesota, and those vehicles were in fact used only in Minnesota.  [#146-1 at ¶¶ 14-16, 29-31, 43-45, 57-59; #146-3 at ¶¶ 9, 17, 25, and 34].[10]  In only two instances is Minnesota not implicated: State Farm is incorporated in Illinois; and Colorado is the situs of the automobile accident. Significantly, the auto accident that caused Mr. Kipling's untimely death and led to this action did not involve the 2006 Toyota Tacoma, the 2008 Toyota Sequoia, the 2008 Toyota Corolla, or the 2007 Toyota Camry, or any of the principal drivers as listed under the Minnesota Policies. *Cf. State Farm Mut. Auto. Ins. Co. v. Mendiola*, 865 P.2d 909, 911 (Colo. App. 1993) (following auto accident in New Mexico, rejecting insured's argument that New Mexico law applied and finding Colorado had most significant relationship to the contract, based on the residency of the insured, where the vehicle was licensed, where the insurance was issued, and where the coverage was intended to apply; and finding that facts concerning the location of the accident "were not relevant in determining choice of law for contract construction").[11]

---

[10] Plaintiff likewise takes issue with several of these paragraphs; however, I find independent support in the record for accepting as true that the contracting parties expected the vehicles to be used exclusively or primarily in Minnesota and that the scope of the vehicles' use was so limited.

[11] The court previously distinguished *Mendiola* in its order denying summary judgment, explaining that "[t]he only issue here is whether the Colorado underinsured motorist statute, section 10–4–609(1)(a), C.R.S., as interpreted, allows the plaintiff to collect benefits under the Minnesota Policies." *Kipling v. State Farm Mut. Auto. Ins. Co.*, No. 11–cv–01948–BNB–CBS, 2012 WL 5409795, at *4 (D. Colo. Nov. 6, 2012).

Section 188(3) of the Restatement (Second) counsels that "[i]f the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied, except as otherwise provided in §§ 189-199 and 203."  Indeed, "[i]nsurance policies generally are interpreted under the law of the state where the policy was issued." *TPLC, Inc. v. United Nat. Ins. Co.,* 44 F.3d 1484, 1491 n.8 (10th Cir. 1995) (citing *Budd v. American Excess Ins. Co.,* 928 F.2d 344, 347 (10th Cir. 1991)).   "Protection of parties' expectations is a central policy underlying the law of contracts," *Pirkey v. Hospital Corp. of America,* 483 F. Supp. 770, 773 (D. Colo. 1980); and "the needs of an interstate system require respect for contractual choices." *Brown v. Fryer*, No. 12–cv–01740–CMA–KMT, 2013 WL 1191405, at *3 (D. Colo. Mar. 22, 2013) (citing *TPLC, Inc.,* 44 F.3d at 1490).

As the court held in *TPLC, Inc.*, the state of incorporation and where the principal place of business is located has "the greatest interest in seeing that its laws apply when interpreting the notice provisions of insurance contracts written and issued" by that state's insurers. *TPLC, Inc.*, 44 F.3d at 1491.  This is noteworthy here, where the Minnesota Policies were issued to be compliant with Minnesota law, include multiple references to Minnesota law, *see, e.g.,* [#26-13 at 1, 4, 18, 20], and where the ratings and premiums were calculated in reliance upon the primary risk being in Minnesota.  *See* [#26-5; #26-7; #26-9; #26-11]; *but see* [#149 at 22, ¶ 7 ("Admitted that benefits could be paid ***to eligible insureds*** for accidents occurring outside the state of Minnesota") (emphasis in original)].  *See also* Comment b to Restatement (Second) § 193; *Mitchell*, 902 F.2d at 794 ("the location of an insured property is not merely one factor to be

Case 1:11-cv-01948-NYW-CBS   Document 164   Filed 02/03/16   USDC Colorado   Page 28 of 32


balanced against others in determining the law governing the parties' rights under an insurance contract…it is the single most important factor in making this choice of law determination.").[12]

Indeed, Brandon Emlen, a Pricing Manager in the Property & Casualty Actuarial Department of State Farm Mutual Automobile Insurance Company, attests that State Farm calculates the premium for auto insurance coverage based on the rates for the state where the vehicle is "principally garaged." [#146-2 at ¶ 7]. Furthermore, State Farm "determines the rates for [UM/UIM] coverage by considering the laws of that particular state, the historical experience in that state and how current loss trends and other factors may affect future experience for that state." [*Id.* at ¶ 9]. State Farm's rates are based on particular requirements and conditions of UM/UIM coverage in a state, and "the fact that Minnesota law does not permit stacking of UM/UIM coverage would be considered [in developing rates for the state]." [*Id.* at ¶ 11]. Michael Roehm, a Team Manager in the Underwriting Department of State Farm Mutual Automobile Insurance Company, attests that four Minnesota residential addresses were "used to determine the partial premium rate charged" for each of the four vehicles covered by the Minnesota Policies. [#146-3 at ¶¶ 9, 17, 25, 34]. Mr. Roehm further attests that each of the four vehicles covered by the Minnesota Policies were "to be garaged in Minnesota." [*Id.* at ¶¶ 11, 19, 27, 36].

Plaintiff places great emphasis on Colorado's policy considerations in allowing injured persons to stack UIM benefits. *See, e.g.,* [#149 at 9]. This factor simply cannot surmount the

---

[12] Plaintiff states that the Colorado Supreme Court "has not adopted Section 193 of the Restatement, and it is not appropriately analyzed here as a result." [#149 at 17]. She nonetheless cites several cases where courts in Colorado have considered section 193 in analyzing a claim [#149 at 17-18], and acknowledges that the Tenth Circuit referenced section 193 in *Kipling* to demonstrate that the Restatement (Second) "specifically addresses 'Contracts of Fire, Surety or Casualty Insurance.'" 774 F.3d at 1311. I find no compelling reason here, and Plaintiff has provided none, to abstain from considering the guidance provided in section 193 in my analysis of her claim.

other considerations that favor the application of Minnesota law, however. The *TPLC, Inc.* court opined that "[i]t simply would not make sense to have [insurer's] insurance contract notice provisions interpreted in fifty different ways every time a dispute arose between [it] and one of its insureds." [*Id.*] Here, the Kiplings were not parties to the contract. They were not listed as principal drivers under the Minnesota Policies, and State Farm had no reason to consider the Kiplings' use of a vehicle in Colorado in calculating the premiums set forth under the Minnesota Policies. This is significant because, in entering the contract, State Farm had no expectation that it would be exposed to risk in a state in which the laws allow injured parties to stack UIM benefits. There is no evidence in the record that the parties to the Minnesota Policies either chose or expected Colorado law to govern issues arising under the policies. *Cf. Mitchell*, 902 F.2d at 794. I find that in consideration of the policies underlying contract law, in furtherance of the protection of parties' justified expectations in entering a contract, to advance certainty, predictability, and uniformity of result, and to facilitate the goals of ease in the determination and application of law, the analysis under § 188 of the Restatement leads to the conclusion that, notwithstanding the choice of law provision, Minnesota is the state "which has a materially greater interest…in the determination of the particular issue and which under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties."[13]  Restatement (Second), § 187(2)(b).

Therefore, even absent the choice of law provisions in the Minnesota Policies, this court concludes that Minnesota law controls.

---

[13] In light of this finding, I need not reach Defendant's argument regarding how Colo. Rev. Stat. § 10-4-609(1)(a) applies to the Minnesota Policies, except to note that authority has evolved since this matter was previously before the district court to suggest that the statute "applies only to liability insurance policies issued or delivered in Colorado that directly concern or have a demonstrable relationship to 'any motor vehicle licensed for highway use in this state.'" *Apodaca v. Allstate Ins. Co.*, 255 P.3d 1099, 1102, 1105 (Colo. 2011) (en banc).

3.     *Whether the Application of Minnesota Law is Contrary to the Fundamental Policy of Colorado*

Even if the court were to determine that Colorado, rather than Minnesota, was the state that had a more significant relationship (which it does not), the court would override the choice-of-law provision in the Minnesota Policies only if the application of Minnesota law would be "contrary to a fundamental policy of Colorado." Restatement (Second) § 187(2)(b). First, Plaintiff does not independently argue that the choice of law provision is not enforceable pursuant to § 187(2)(b). *See generally* [#149]. She argues in her Response to Defendant's Motion for Summary Judgment on Remand that § 187 is inapplicable because there is "no disagreement [] about how to interpret the underinsured motorist coverage provisions… [w]hat the Minnesota Policies say about their UIM coverage is not in dispute," [#162 at 5], and thus the type of disagreement for which Minnesota law should control has not arisen. For the reasons set forth above, this court respectfully disagrees that it should omit § 187 from its analysis. Furthermore, the contract is clear that Minnesota law is the choice of law for disputes arising out of the policies, except in the limited circumstances as described below that provision, for which Illinois law should apply. *See Brown*, 2013 WL 1191405, at *3 ("[the insurer and the insured], who entered into the contract, clearly expected that Indiana law would govern, as indicated by the choice of law provision included in the policy").[14] To the extent Plaintiff suggests the choice of law provision is less effective because Quicksilver did not affirmatively negotiate which law should apply in the event of a dispute concerning the policies, this court is not persuaded. *See* Comment b to Restatement (Second) § 187 ("Choice-of-law provisions contained in [adhesion]

---

[14] Plaintiff frames the dispute at issue here as "whether the Minnesota Policies can stack under Colorado law." [#162 at 5]. This styling presupposes that Colorado law applies to the determination of Plaintiff's claim and thus circumvents the very analysis the Tenth Circuit directed this court to engage in.

contracts are usually respected. Nevertheless, the forum will scrutinize such contracts with care and will refuse to apply any choice-of-law provision they may contain if to do so would result in substantial injustice to the adherent."). *See also Hansen*, 876 P.2d at 113 (upholding choice of law provision in written incentive compensation plan between bank branch manager and his employer). Indeed, no party to the Minnesota Policies has complained that the choice of law provision should not be upheld on the basis that the contract is one of adhesion. And, based on the substantial relationship between the contracting parties, the contract, and Minnesota, I do not find that enforcing the choice-of-law provision would result in substantial injustice.

Second, "[t]o succeed on a claim that the chosen law contravenes a fundamental policy of the forum state, the policy must be a substantial one." *Hansen*, 876 P.2d at 113 (citing *Pirkey*, 483 F. Supp. at 770) (application of the chosen law for question of damages would have raised fundamental due process problems)). *Cf. Saveraid v. State Farm Ins. Co.*, 597 F. App'x 492, 495 (10th Cir. 2015) (noting, in considering whether New Mexico would apply its own law to allow stacking of UIM coverage under the exception that allows New Mexico courts to consider whether the foreign law would violate "a fundamental principle of justice under New Mexico law, that "[m]ere differences among state laws should not be enough to invoke the public policy exception...Otherwise, the forum law would always apply unless the foreign law were identical, and the exception would swallow the rule.") (citations omitted). As previously noted, it is unclear that it is fundamental policy of Colorado to apply § 10-4-609(1)(a) to insurance policies written or delivered outside of Colorado. *See Apodaca*, 255 P.3d at 1102, 1105.

As Plaintiff concedes that under Minnesota law she is not entitled to UIM benefits contained in the Minnesota Policies, I find that judgment in favor of State Farm and against Ms. Kipling is appropriate.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that:

1. Defendant's Motion for Summary Judgment [#146] is **GRANTED**;

2. Plaintiff's Motion for Summary Judgment [#149] is **DENIED**;

3. Plaintiff's Motion to Strike [#150] is **GRANTED IN PART** and **DENIED IN PART**; and

4. The Clerk of the Court is directed to **ENTER JUDGMENT** in favor of Defendant State Farm Mutual Automobile Insurance Company and against Plaintiff Kathryn Kipling.

DATED: February 3, 2016                                    BY THE COURT:

                                                           s/Nina Y. Wang_____
                                                           United States Magistrate Judge